## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Frederick J. Kapala | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 12 C 50230 | **DATE** | 2/13/2013 |
| **CASE TITLE** | Fannie Mae, et al. v. Hamer, et al. | | |

**DOCKET ENTRY TEXT:**

Defendants Gillette and Wegman's motions to join [85] [87] in the cross motion for summary judgment are granted. Defendants' motion to dismiss for lack of jurisdiction [66] is denied. Plaintiffs' motion for summary judgment [44] is granted in part and denied in part. Defendant Hamer's cross motion for summary judgment [78] is granted in part and denied in part. Defendant Acardo's motion for summary judgment [82] is denied. The declaratory judgment shall issue. This case is closed.

■[ For further details see text below.]

Docketing to mail notices.

---

Plaintiffs, the Federal National Mortgage Association ("Fannie Mae"), the Federal Home Loan Mortgage Corporation ("Freddie Mac"), and the Federal Housing Finance Agency ("FHFA") as conservator for the other two, sued defendants, Brian Hamer, the director of the Illinois Department of Revenue; John Acardo, the DeKalb County Clerk and Recorder; Karen Stukel, the Will County Recorder; Nancy McPherson, the Winnebago County Recorder; Dawn Young, the Whiteside County Recorder; Debbie Gillette, the Kendall County Recorder; and Sandy Wegman, the Kane County Recorder, seeking a declaratory judgment that Fannie Mae and Freddie Mac (collectively the "Enterprises") are exempt from defendants' recent attempts to enforce real estate transfer taxes against the Enterprises. Currently before the court is plaintiffs' motion for summary judgment, defendant Hamer's cross motion for summary judgment, defendant Acardo's cross motion for summary judgment, defendant Hamer's motion to dismiss for lack of jurisdiction, and defendants Gillette and Wegman's motions to join defendant Acardo's cross motion for summary judgment. For the reasons that follow, plaintiffs' motion is granted in part and denied in part, defendant Hamer's cross motion for summary judgment is granted in part and denied in part, defendant Acardo's cross motion for summary judgment is denied, Hamer's motion for to dismiss is denied, and Gillette and Wegman's motions to join are granted. The court enters a declaratory judgment that the Enterprises are exempt from the real estate transfer taxes.

### I. BACKGROUND

The Enterprises are private corporations that were chartered by the federal government to create stability in the financial sector dealing with mortgages. Following the subprime mortgage crisis in 2008, FHFA took control of the Enterprises as their conservator. In the charters of both Enterprises, and FHFA's charter as conservator, Congress exempted the Enterprises from all state and local taxation, with exceptions not relevant here. See 12 U.S.C. § 1723a(c)(2) ("[Fannie Mae] shall be exempt from all taxation now and hereafter imposed by any State, territory, possession, Commonwealth, or dependency of the United States or by the District of Columbia, or any county, municipality, or local taxing authority . . . ."); 12 U.S.C. § 1452(e) ("[Freddie Mac]

shall be exempt from all taxation now or hereafter imposed by . . . any State, county, municipality, or local taxing authority . . . ."); 12 U.S.C. § 4617(j)(2) ("[FHFA] shall be exempt from all taxation imposed by any State, county, municipality, or local taxing authority . . . .").

Despite that language, beginning in early 2012, defendants began attempting to enforce real estate transfer taxes when one of the Enterprises sought to record a document with a county recorder's office. See 35 ILCS 200/31-10 (providing for a fifty cent tax for every $500 of value for any real estate transfer in Illinois to be paid into the state treasury); 55 ILCS 5/5-1031 (empowering a county board to levy an additional tax up to twenty-five cents for every $500 of value for any real estate transfer in the county to be paid to the county); 55 ILCS 5/5-1031.1 & 65 ILCS 5/8-3-19 (empowering home rule counties or municipalities to place additional transfer taxes or increase the transfer tax rates on transfers of real estate in the county to be paid to the county or municipality). Specifically, defendants Gillette and Wegman currently refuse to record a document that lists the Enterprises as exempt from the taxes. Defendants Acardo, Stukel, McPherson, and Young also sent the Enterprises a demand letter requesting that the Enterprises pay several years worth of transfer taxes and threatening litigation if the Enterprises failed to pay.

In reply, plaintiffs filed the instant suit seeking a declaratory judgment that the Enterprises are exempt from the transfer taxes. Shortly thereafter, plaintiffs filed for summary judgment based on the exemption statutes.[1] After plaintiffs filed their motion for summary judgment, defendant Acardo, joined now by defendants Gillette and Wegman, filed a cross motion for summary judgment arguing that the exemption from "all taxation" does not include real estate transfer taxes. Defendant Hamer also filed a cross motion for summary judgment, based largely on the same theory as Acardo, but argued in the alternative that even if the exemption applies to the Enterprises, Illinois law requires the tax to be assessed against either party to a real estate transaction, therefore this court should not grant the plaintiffs' request to immunize the transactions as a whole, but rather just the exempt party. Finally, Hamer, joined by Wegman and Gillette, filed a motion to dismiss for lack of jurisdiction based on the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341.

## II. ANALYSIS

### A. Jurisdiction & Comity

Before addressing the merits of the parties' summary judgment motions, the court must first address defendants' motion to dismiss for lack of jurisdiction. See India Breweries, Inc. v. Miller Brewing Co., 612 F.3d 651, 657 (7th Cir. 2010) ("Before we may proceed to the merits of [the case], we must address the threshold issue of our jurisdiction to hear the case."). In their motion, defendants do not contest that the Enterprises' charters permit this court to exercise jurisdiction over cases brought by the Enterprises in general, but argue instead that the TIA serves to prevent this court from exercising jurisdiction. The TIA provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. Defendants point out that the instant declaratory judgment seeks to prevent the assessment of tax under state law and that Illinois courts can provide the same adequate remedy to the Enterprises. Accordingly, they argue, this court lacks jurisdiction.

The TIA is "first and foremost a vehicle to limit drastically district court jurisdiction to interfere with so important a local concern as the collection of taxes." Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc., 651 F.3d 722, 726 (7th Cir. 2011) (en banc) (quotation marks omitted). "The requirement serves to minimize the frictions inherent in a federal system of government, and is considered so important that the duty of federal courts to cede litigation seeking to enjoin state tax statutes to the state courts (a duty of 'comity'—that is, of respect for another sovereign) extends beyond the limits of the Tax Injunction Act." Id. at 725. There are two circumstances that courts have recognized in which the TIA gives way, though. First, when it is the United States, or, in limited circumstances, one of its instrumentalities that is being taxed. See Arkansas v. Farm Credit Servs., 520 U.S. 821, 823-24 (1997). Second, when Congress, who passed the TIA in the first place, has passed another statute that indicates that its grant of jurisdiction functions notwithstanding the TIA. See City & Cnty. of S.F. v. Assessment Appeals Bd. for City & Cnty. of S.F., 122 F.3d 1274, 1276-77 (9th Cir. 1997).

In this case, jurisdiction for Freddie Mac is predicated primarily on its charter, which states that "[n]otwithstanding section 1349 of Title 28 or any other provision of law . . . all civil actions to which [Freddie Mac] is a party shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such actions . . . ." 12 U.S.C. § 1452(f) (emphasis added). By the plain language of Freddie Mac's charter, this court has original jurisdiction over any civil action to which Freddie Mac is a party notwithstanding any other provision of law, which includes the TIA. This conclusion is reinforced by the fact that Congress added the TIA in its current form to the United States Code in 1948 while Freddie Mac was not chartered until 1970. Congress would have known of the TIA in 1970 when it created Freddie Mac, or in 1979, 1984, 1989, 1992, or 2008 when it amended Freddie Mac's charter, but still provided district courts with jurisdiction "notwithstanding . . . any other provision of law." Id.; see also City & Cnty. of S.F., 122 F.3d at 1276-77 ("Second, section 632's provisions have force '[n]otwithstanding any other provision of law.' 12 U.S.C. § 632. '[A]ny other provision of law' includes the Tax Injunction Act. Further, section 632 was amended in 1991, after the enactment of the Tax Injunction Act, without any modification to the unqualified jurisdictional grant of a federal forum to federal reserve banks.").

Indeed, § 1452(f) functions to provide this court with jurisdiction over the claims made by all of plaintiffs, as its plain language gives this court jurisdiction over "all civil actions to which [Freddie Mac] is a party," not just Freddie Mac's claims. § 1452(f) (emphasis added); see Huntingdon Valley Club Condo. Ass'n v. Pa. Hous. Fin. Agency, No. Civ.A.04-4770, 2005 WL 44524, at *6 (E.D. Pa. Jan. 10, 2005) ("[T]he statutory language in § 1452(f) confers federal jurisdiction over an entire action to which Freddie Mac is a party. A common reading of the language 'all civil actions to which [Freddie Mac] is a party' suggests that jurisdiction extends to the entire suit."); see also Spring Garden Assocs., L.P. v. Resolution Trust Corp., 26 F.3d 412, 415-16 (3d Cir. 1994) (interpreting a statute nearly identical to § 1452(f) and finding that its language conferring "original federal jurisdiction over 'any action, suit or proceeding to which [RTC] is a party,' "encompasses the entirety of any case to which the RTC is a party and not just those claims in such a case brought by or against the RTC."). Accordingly, the TIA does not deprive this court of jurisdiction over any part of this case.

However, the fact that the TIA does not bar this court's jurisdiction is not the end of the inquiry. Defendants also argue that this court is restrained from exercising jurisdiction due to the principles of comity. Comity is not a jurisdictional concept, as defendants appear to argue, instead it is a prudential concept whereby the district court may exercise its discretion to dismiss a case in circumstances even broader than those set out in the TIA. See Levin v. Commerce Energy, Inc., 560 U.S. ___, 130 S. Ct. 2323, 2330 (2010). The Supreme Court has noted that "the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." Younger v. Harris, 401 U.S. 37, 44 (1971). "The concept does not mean blind deference to 'State's Rights' any more than it means centralization of control over every important issue in our National Government and its courts." Id. "What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Government, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." Id. In the field of taxation, "[c]omity's constraint has particular force when lower federal courts are asked to pass on the constitutionality of state taxation of commercial activity." Levin, 130 S. Ct. at 2330. This is not such a case nor is it such a case that otherwise unduly interferes with Illinois' activities or interests. The main question before this court does not request the invalidation of any state tax law based on the constitution. Instead, the issue is one of federal statutory law only—whether the Enterprises' exemption, written by Congress, from "all taxation" includes only direct taxation or also includes excise taxes like real estate transfer taxes. See Greenberg v. Town of Scarsdale, 477 F. App'x 849, 850 (2d Cir. 2012) ("[C]laims [that] are in effect seeking a federal[] court ruling on a local tax matter" are "the type of suit the TIA and the principle of comity are intended to prohibit." (internal quotation marks omitted and emphasis added)); see also Oakland Cnty v. Fed'l Housing Fin. Agency, 871 F.

Supp. 2d 662, 664 (E.D. Mich. 2012) (noting that real estate transfer taxes, like those here, are excise (rather than direct) taxes). Furthermore, if left to each state to consider the scope of Enterprises' statutory exemption, an act of Congress could end up with fifty different, conflicting interpretations without an interpretation from a federal court unless a state appeal were to make it all the way to the Supreme Court and receive the statistically rare grant of certiorari. See Thomas G. Hungar & Ryan G. Koopmans, Appellate Advocacy in Antitrust Cases: Lessons from the Supreme Court, 23 Antitrust 53, 53 (2009) (noting that less than one percent of petitions for certiorari are granted). Accordingly, this court will not exercise its discretion to dismiss this case in its entirety based on comity. Thus, defendants' motion to dismiss is denied.

## B. The Tax Exemptions

The primary issue in this case is determining what Congress meant when it wrote into the Enterprises' charters that they were "exempt from all taxation" from state and county governments, absent exceptions not relevant here. The plain language of "exempt from all taxation" seems clear—state and county governments lack the authority to tax the Enterprises in any way. Typically, when the plain language of a statute is clear, that is the end of the analysis and there is no need to delve into the question any further. See United States v. Ye, 588 F.3d 411, 414-15 (7th Cir. 2009) ("Statutory interpretation begins with the plain language of the statute. This court assumes that the purpose of the statute is communicated by the ordinary meaning of the words Congress used; therefore, absent any clear indication of a contrary purpose, the plain language is conclusive." (citation and quotation marks omitted)). The interpretation of "exempt for all taxation," however, is muddied in this case by two seemingly contradictory lines of cases by the United States Supreme Court which sought to interpret exemptions very similar to those in the Enterprises' charters.

The first, relied on heavily—indeed nearly exclusively—by defendants, is a line of cases culminating in United States v. Wells Fargo Bank, 485 U.S. 351 (1988). In Wells Fargo, a unanimous eight-member Court dealt with the tax exemption provided by Congress for "Project Notes," tax-free obligations issued by state and local housing authorities to alleviate the 1930s housing shortage. Id. at 353. The case came before the Court because the holder of some Project Notes died, leaving approximately nine and a half million dollars worth of the notes in his estate. The petitioners claimed that the value of the notes added to the estate was tax exempt for the purposes of the federal estate tax. The Court was specifically tasked with interpreting 42 U.S.C. § 1437i(b) which stated that "[Project Notes], including interest thereof, . . . shall be exempt for all taxation now or hereafter imposed by the United States." Wells Fargo, 485 U.S. at 355. The Court began by recognizing that an estate tax is not a direct tax on the value of the property, but an excise tax. Id.; see also U.S. Trust Co. of N.Y. v. Helvering, 307 U.S. 57, 60 (1939) ("An estate tax is not levied upon the property of which an estate is composed. It is an excise imposed upon the transfer or shifting in relationships to property at death . . . . [I]nheritance taxes can be measured by the value of Federal bonds exempted by statute from . . . taxation in any form."). The Court found, based on a string of cases dating back to the turn of the twentieth century, that bonds that were exempt from "all taxation" were only exempt from direct taxes, not excise taxes. Wells Fargo, 485 U.S. at 359. Accordingly, the estate tax applied to the entire value of the estate, including the Project Notes.

Standing in contrast, plaintiffs rely on a line of cases that include Federal Land Bank of St. Paul v. Bismarck Lumber Co., 314 U.S. 95 (1941). In Bismarck, the Court, again writing unanimously as an eight-member panel, was tasked with determining whether Nevada could impose state sales taxes on the Federal Land Bank of St. Paul. Id. at 98. In deciding the issue, the Court turned to the plain language of section 26 of the Federal Farm Loan Act, which stated that "every Federal land bank . . . shall be exempt from Federal, State, municipal, and local taxation . . . ." Id. at 97 n.1. Specifically, the Court stated that "[t]he unqualified term 'taxation' used in section 26 clearly encompasses within its scope a sales tax such as the instant one, and this conclusion is confirmed by the structure of the section. In reaching an opposite conclusion the court below ignored the [statute's] plain language . . . ." Id. at 99. Therefore, the Court found that, based on the statutory exemption, the Federal Land Bank was exempt from the state's attempt to impose an excise tax.[2]

In both cases, and the line of cases following and preceding them, the Supreme Court interpreted an

exemption from 'all taxation,' or something near to that phrase, to mean different things. The parties offer differing explanations as to how to synthesize these case lines. Defendants argue that <u>Wells Fargo</u> sets out the presumptive rule—that exemptions from all taxation do not include excise taxes—but that <u>Bismarck</u> was a special case dealing only with federal instrumentalities, which defendants argue the Enterprises are not. Plaintiffs, on the other hand, argue that <u>Wells Fargo</u> only sets out the rules for tax exempt property, while <u>Bismarck</u> deals with tax exempt entities. Plaintiffs point out that the Federal Land Bank's federal instrumentality status is not mentioned by the Supreme Court in <u>Bismarck</u> and that the Court did not even mention the tax exemption status specific to federal instrumentalities. <u>See</u> <u>United States v. City of Detroit</u>, 355 U.S. 466, 469 (1958) ("This Court has held that a State cannot constitutionally levy a tax directly against the Government of the United States or its property without the consent of Congress.").

This court does not consider these arguments in a vacuum, however, as three other federal courts have dealt with the tension between <u>Bismarck</u> and <u>Wells Fargo</u> in the same circumstances—suits between the Enterprises and state/county officials seeking to impose transfer taxes. The first of the three, <u>Oakland County v. Federal Housing Finance Agency</u>, 871 F. Supp. 2d 662 (E.D. Mich. 2012), agreed with defendants and found that <u>Wells Fargo</u> controlled while distinguishing <u>Bismarck</u> based on the instrumentality status of the Federal Land Banks. Both of the other two opinions, however, stuck to the plain language of the exemption and found that the Enterprises' "all taxation" exemption includes excise taxes and distinguished <u>Wells Fargo</u> by pointing out that it dealt with exempt property rather than an exempt entity. <u>See</u> <u>Hager v. Fed'l Nat'l Mortg. Ass'n</u>, Civil Action No. 11-2090(JDB), 2012 WL 3228658, at *4 (D.D.C. Aug. 9, 2012); <u>Hertel v. Bank of Am., N.A.</u>, No. 1:11-CV-757, 2012 WL 4127869, at *6 (W.D. Mich. Sept. 18, 2012).

After carefully reviewing these opinions, this court respectfully concludes that the approach taken by <u>Hager</u> and <u>Hertel</u> is more compelling. <u>Bismarck</u> does not mention the federal instrumentality status of the Federal Land Banks, instead it relies specifically, and solely, on the statutory exemption written by Congress—a statutory exemption nearly identical to the ones in this case. On the other hand, <u>Wells Fargo</u> deals only with how to interpret a tax exemption on property using cases that had only considered the taxable status of exempt property. <u>Bismarck</u>, dealing with a tax exempt entity whose exemption is established by statute, is therefore controlling in this instance.

Furthermore, since <u>Bismarck</u>, the Supreme Court handed down <u>First Agricultural National Bank of Berkshire County v. State Tax Commission</u>, 392 U.S. 339, 340-42 (1968), where the Court specifically refused to consider the question of whether the Federal Reserve Act changed the national banks from being federal instrumentalities for taxation purposes, because it found that the state could not impose sales and use taxes under a broad statutory exemption similar to the one here. <u>See</u> <u>id.</u> at 341 ("Because of pertinent congressional legislation in the banking field, we find it unnecessary to reach the constitutional question of whether today national banks should be considered nontaxable as federal instrumentalities."). Contrary to the tack taken by the defendant, it follows that there is no need to detail the attributes associated with a federal instrumentality, to analyze how those attributes correspond to the Enterprises, or to correlate that analysis with the scope of the statutory tax exemption in this case.

Although it is not the prerogative of a district court to assess the efficacy of a legislative enactment, it is worth noting that to adopt defendants' interpretation of the exemption would frustrate Congress's intent in creating the Enterprises in the first place. The purpose of the Enterprises is to create stability in the secondary mortgage market and one of the ways Congress attempted to accomplish that was to make operating in those markets somewhat less expensive and more predictable across the country. <u>See, e.g.</u>, 12 U.S.C. § 1716; <u>Pierelli Armstrong TireCorp. Retiree Medical Benefits Trust ex. rel. Fed. Nat'l Mortg. Ass'n v. Raines</u>, 534 F.3d 779, 783 (D.C. Cir. 2008) ("Fannie Mae's mission is to increase affordable housing for moderate- and low-income families. It purchases mortgages originated by other lenders and helps lenders convert their home loans into mortgage-backed securities. The goal is to provide stability and liquidity to the mortgage market. This allows mortgage lenders to provide more loans, thereby increasing the rate of homeownership in America."); <u>Am.</u>

Bankers Mortg. Corp. v. Fed. Home loan Mortg. Corp., 75 F.3d 1401, 1406-07 (9th Cir. 1996) ("The congressional purposes for Freddie Mac are clearly designed to serve the public interest by increasing the availability of mortgages on housing for low- and moderate-income families and by promoting nationwide access to mortgages. . . . The FHLMC has a public statutory mission: to maintain the secondary mortgage market and assist in meeting low- and moderate-income housing goals." (citations and quotation marks omitted)). If the defendants' reading of the exemption was correct, then Congress would have provided a very meager tax exemption as there are very few direct taxes. See Nat'l Fed'n of Indep. Bus. v. Sebelius, 567 U.S. ___, 132 S. Ct. 2566, 2598-99 (2012) (noting that capitations—taxes paid by every person "without regard to property, profession, or any other circumstance"—, real property taxes, and personal property taxes are the only direct taxes). Many of the most common taxes—like sales taxes—are excise taxes. See Rosenow v. Ill. Dep't of Revenue, 715 F.2d 277, 280 n.4 (7th Cir. 1983). It would be inappropriate to assume that Congress intended to permit the states to tax the Enterprises with a virtually unfettered panoply of tax options where it wrote they were to be exempt from "all taxation." The plain language admonition of Ye governs here. The Enterprises' exemptions says "all taxation," and this court finds no overriding reason to ignore that language and reread it as "all taxation except excise taxes." Accordingly, the Enterprises are exempt, pursuant to the plain language of their charters, from the real estate transfer taxes.[3]

## C. The Declaratory Judgment

Although the court has resolved the main issue in this case, and the primary thrust of the parties' motions, there is still one lingering issue that merits attention before the court can enter its declaratory judgment. In their original complaint, and then in their motion for summary judgment, plaintiffs seek a declaratory judgment not only holding that the entities are immune from taxation, but that all real estate "transactions" in which they engage are also immune from taxation, thus making not only the Enterprises immune from taxation but also the other party to any transaction selling or buying real estate from the Enterprises immune from taxation. Defendant Hamer, in his cross motion for summary judgment, requests that this court not reach that issue for a variety of reasons. For the reasons that follow, the court agrees with Hamer and declines to issue the declaratory judgment as to all transactions involving the entities.

The parties agree that the Illinois tax provisions in question do not place the burden of paying the tax on either buyer or seller specifically, and thus may be sought in any particular case from either or both. However, neither party cites any Illinois authority for such a stipulation, and this court's research has not produced any. A court is not bound by the parties' attempt to stipulate to the meaning of the law. See Equitable Life Assurance Soc'y v. MacGill, 551 F.2d 978, 983 (5th Cir. 1977) ("In any case, it is well settled that a court is not bound to accept as controlling stipulations as to questions of law."). The court notes that the real estate transfer taxes are "imposed on the privilege of transferring title to real estate located in Illinois," 35 ILCS 200/31-10, and the only party with the privilege to transfer the title would be the grantor/seller. See Rodrigue v. Rodrigue, 218 F.3d 432, 437 (5th Cir. 2000) (describing the right to alienate real property as one of the bundle of rights that comes with ownership of real property). Indeed, although this court found no Illinois decision directly addressing the question, in each case in which the above-quoted language exists, it appears the Illinois courts treat it as a tax on the grantor/seller. See Stahl v. Vill. of Hoffman Estates, 296 Ill. App. 3d 550, 552 (1998) (setting out the "imposed on the privilege" language from a functionally identical Village ordinance and then declaring "[u]nder the ordinance, the grantor of a deed conveying Village property would incur transfer tax liability." (emphasis added)); Ball v. Vill. of Streamwood, 281 Ill. App. 3d 679, 682 (1996) (setting out the "imposed on the privilege" language from another Village ordinance and then noting that "[p]laintiffs, individually, transferred title to real estate located within the Village to third parties and subsequently purchased residences outside the Village. Plaintiffs were taxed and, subject to various fines for noncompliance, paid the Village's transfer tax."). But see Chicago Municipal Code 3-33-030 (amended November 16, 2011) (using the "imposed on the privilege" language but explicitly (1) placing the presumptive burden on the buyer and (2) permitting the city to impose the tax on the seller in the event the buyer is exempt). Nevertheless, in light of the lack of Illinois precedent to guide this court's determination, the court need not, and will not, wade into interpreting state tax laws for a number of

reasons.

First, the comity concerns this court addressed when deciding the federal question of the Enterprises' exemption are much stronger when considering whether, and how, to interpret Illinois tax laws. See Greenberg, 477 F. App'x at 850. Although plaintiffs have not requested the constitutional invalidation of a state tax law, "[i]t is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible." Levin, 130 S. Ct. at 2330 (quotation marks omitted). Plaintiffs invite this court to guess as to which interpretation of Illinois tax statutes Illinois courts would favor, which could potentially have a significant disruptive effect on Illinois' capability to collect taxes. This court declines. The court has interpreted the pertinent federal law and vindicated the federal interest herein. To the extent plaintiffs wish additional clarity as to Illinois law, the court directs them to the Illinois courts.

Second, in making the request for transactional relief, plaintiffs are no longer attempting to vindicate their own interests, but rather those of third parties—the other party in each real estate transfer with the Enterprises—whom the state of Illinois may seek to tax. See Warth v. Seldin, 422 U.S. 490, 499 (1975) ("[E]ven when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, this Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."). Accordingly, plaintiffs likely lack standing to request any such relief. See id.

Third, the issue is not ripe for consideration at this time. "The inquiry into ripeness is made more complicated when suit is brought under the Declaratory Judgment Act, 28 U.S.C. § 2201, and hence seeks preemptive relief, but the ability to bring suit under that Act does not vitiate the constitutional requirement that the claim address a case of actual controversy." Wis. Cent., Ltd. v. Shannon, 539 F.3d 751, 759 (7th Cir. 2008) (quotation marks omitted). "The Supreme Court, however, has tried to clarify this standard, recently reiterating that, basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. (alterations and quotation marks omitted). Here, the court is asked to opine on the effect of federal exemption in the event that (1) the parties' unsupported interpretation of Illinois tax law is correct and (2) defendants actually seek to impose the tax on the non-exempt parties to the Enterprises' real estate transactions. The court finds that those two conditions serve to prevent the issue here from having the sufficient reality necessary to justify the issuance of a declaratory judgment.

With that in mind, the court will grant, in part, plaintiffs' motion for summary judgment and deny it in part. Specifically, the court finds that the Enterprises, pursuant to the plain language of their charters, are exempt from Illinois' real estate transfer taxes, which would include exemption from any amount allegedly owed on transfers from the past to which the Enterprises were a party. However, the court will also grant in part defendant Hamer's summary judgment motion and decline to issue the declaratory judgment as to the transactional relief request. This court will leave it to Illinois courts to determine which party—grantor or grantee—bears the burden to pay the real estate transaction tax and/or whether the state may enforce the tax on the other party to the transaction where the normally-taxed party is exempt.

## III. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss for lack of jurisdiction is denied. Plaintiffs' motion for summary judgment is granted in part and denied in part. Defendant Hamer's cross motion for summary judgment is likewise granted in part and denied in part. Defendant Acardo's cross motion for summary judgment is denied. Accordingly, plaintiffs' request for a declaratory judgment is granted in part, and the court issues a declaratory judgment that the Enterprises are exempt from the Illinois real estate transfer taxes.

1. Plaintiffs do not seek summary judgment due to a constitutional exemption from taxation based on being a federal instrumentality, instead they rely only on the statutes which chartered each of the plaintiffs. Accordingly, this court will not consider whether they qualify as federal instrumentalities for tax purposes. But see Nev. ex rel. Hager v. Countrywide Home Loans Servicing, LP, 812 F. Supp. 2d 1211, 1217 (D. Nev. 2011) (finding that Fannie Mae is not a federal instrumentality for tax purposes but is immune from taxation based on the FHFA charter).

2. As plaintiffs point out, "[t]here is no question that a 'sales tax' is an excise tax . . . ." Rosenow v. Ill. Dep't of Revenue, 715 F.2d 277, 280 n.4 (7th Cir. 1983).

3. Because the court finds that the plain language of the Enterprises' charters controls, there is no need to determine whether the FHFA's charter as conservator would provide similar protections.